**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NUTRAMAX LABORATORIES, INC. and NUTRAMAX LABORATORIES VETERINARY SCIENCES, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>ALEKSANDRA PETROVIC,<br><br>Defendant. | Case No.:<br><br>**JURY TRIAL DEMANDED**<br><br>**PERMANENT INJUNCTIVE RELIEF REQUESTED** |

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiffs Nutramax Laboratories, Inc. ("Nutramax Labs") and Nutramax Laboratories Veterinary Sciences, Inc. ("Nutramax Vet") (collectively, "Nutramax") file this Complaint against Aleksandra Petrovic ("Defendant") and in support allege as follows:

**NATURE AND BASIS OF ACTION**

1. This action has been filed to stop unauthorized resellers from unlawfully interfering with Nutramax's contractual relationships with its authorized resellers, and from selling and distributing, under Nutramax's well-known trademarks, products that are materially different from Nutramax's authorized products without Nutramax's consent or supervision. Through her unauthorized sales, Defendant unlawfully misappropriated the goodwill associated with Nutramax's COSEQUIN, DASUQUIN, and NUTRAMAX LABORATORIES trademarks (the "Nutramax Marks") without subjecting the Nutramax products that she sells to the same rigorous storage and distribution, product knowledge, and customer support requirements that Nutramax requires of its authorized resellers.

2. Defendant's actions constitute (1) trademark infringement in violation of Section 32(1) of the Lanham Act (15 U.S.C. § 1114(1)); (2) unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); and (3) tortious interference with a contract under Illinois common law. In response to these actions, Nutramax is seeking injunctive relief, actual damages, disgorgement of profits, punitive damages, costs, and reasonable attorneys' fees.

## THE PARTIES

3. Plaintiff Nutramax Labs is a corporation organized and existing under the laws of the State of South Carolina. Nutramax Labs maintains its headquarters and principal place of business at 946 Quality Drive, Lancaster, South Carolina 29720. Nutramax Labs is the owner of the Nutramax Marks which identify supplements for companion animals sold to consumers throughout the United States and abroad.

4. Plaintiff Nutramax Vet is a corporation organized and existing under the laws of the state of South Carolina. Nutramax Vet maintains its headquarters and principal place of business at 946 Quality Drive, Lancaster, South Carolina 29720. Nutramax Vet is the licensee of the Nutramax Marks, which it uses to identify supplements for companion animals sold to consumers throughout the United States and abroad.

5. Defendant Aleksandra Petrovic is an Illinois resident residing at, upon information and belief, 420 E Waterside Dr., Unit 410, Chicago, IL 60601-8000. She is offering to sell and/or selling unauthorized and infringing Nutramax products to consumers throughout the United States through the ecommerce platform Amazon.com under the seller account name "Isell2" (the "Seller Account"). A true and correct copy of the Amazon Seller information page for the Seller Account is attached hereto as Exhibit A. This information page lists an address of 651 S. Sutton Road #189,

Streamwood, Illinois 60107; this appears to be a UPS Store and not an actual business or residential address.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over Nutramax's federal claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1337, and 1338 because this action arises under the Lanham Act (15 U.S.C. §§ 1051 et seq).

7. This Court has supplemental jurisdiction over Nutramax's Illinois common law claim pursuant to 28 U.S.C. § 1367.

8. This Court further has jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiffs and Defendant are citizens of different states and the amount in controversy is higher than $75,000.

9. Defendant is subject to this Court's personal jurisdiction because she is a resident of this state and has availed herself of the benefits of doing business in Illinois.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant is a resident of this district engaging in tortious and unlawful conduct in this judicial district by advertising, offering to sell and/or selling unauthorized and infringing Nutramax products.

## FACTUAL BACKGROUND

### I. NUTRAMAX AND ITS PRODUCTS

11. Nutramax researches, develops, and sells high-quality, innovative health supplements. Nutramax's wide variety of animal health supplements are utilized for several purposes, including to support intestinal, joint, liver, and immune health. Nutramax's health supplement products are highly regarded in the nutritional supplement industry because they are supported by scientific research and studies.

12. Over the years, Nutramax has spent millions of dollars researching and developing innovative health supplement products. Every year, Nutramax devotes significant financial resources – in the form of marketing, advertising, and other initiatives – to building its brand as a provider of high-quality, safe, and effective animal health supplements.

13. Nutramax sells its health supplement products through a diversified portfolio of well-recognized and widely trusted brands.

14. Each Nutramax product bears the NUTRAMAX LABORATORIES mark in addition to a mark or marks distinguishing the product's specific line. For example, Nutramax's Cosequin® packaging bears both the NUTRAMAX LABORATORIES and COSEQUIN marks, and Nutramax's Dasuquin® packaging bears both the NUTRAMAX LABORATORIES and DASUQUIN marks.

15. Cosequin® and Dasuquin® supplements are some of the most popular joint health products in the companion animal market. Nutramax has generated significant sales of both of these product lines nationwide, including in this judicial district.

16. Since at least as early as 1991, Nutramax has continuously and exclusively used the NUTRAMAX LABORATORIES mark in interstate commerce to identify its products.

17. Since at least as early as 1992, Nutramax has continuously and exclusively used the COSEQUIN mark in interstate commerce to identify joint health supplements for animals.

18. Since at least as early as 2006, Nutramax has continuously and exclusively used the DASUQUIN mark in interstate commerce to identify joint health supplements for animals.

19. The NUTRAMAX LABORATORIES mark appears prominently, along with the mark or marks distinguishing the product's specific line, in all advertising and marketing materials for all of the Nutramax products at issue in this case.

20. In recognition of Nutramax's exclusive right to use the Nutramax Marks in commerce in the United States, the U.S. Patent and Trademark Office has issued Nutramax registrations for those marks, namely, U.S. Reg. No. 2,231,260 (NUTRAMAX LABORATORIES), U.S. Reg. No. 4,077,241 (NUTRAMAX LABORATORIES (Stylized)), U.S. Reg. No. 4,654,181 (NUTRAMAX LABORATORIES VETERINARY SCIENCES, INC. (Stylized)), U.S. Reg. No. 1,791,253 (COSEQUIN), U.S. Reg. No. 5,662,197 (COSEQUIN), U.S. Reg. No. 3,266,390 (DASUQUIN), and U.S. Reg. No. 6,872,420 (DASUQUIN). True and correct copies of these registrations are attached as Exhibit B.

21. The registrations for the Nutramax Marks are *prima facie* evidence of their validity and constitute constructive notice of Nutramax's ownership of the Nutramax Marks in accordance with Sections 7(b) and 22 of the Lanham Act (15 U.S.C. §§ 1057(b) and 1072).

22. Apart from the '197 registration for COSEQUIN and the '420 registration for DASUQUIN, the registrations for the Nutramax Marks are incontestable pursuant to Section 15 of the Lanham Act (15 U.S.C. § 1065) and - pursuant to Section 33(b) of the Lanham Act (15 U.S.C. § 1115(b)) – constitute conclusive evidence of Nutramax's exclusive right to use the Nutramax Marks in commerce in the United States.

23. By virtue of Nutramax's exclusive use of the Nutramax Marks in interstate commerce, Nutramax is the exclusive owner of all right, title, and interest in the Nutramax Marks and the corresponding registrations.

24. Over the years, Nutramax has diligently protected the Nutramax Marks and their accompanying goodwill.

## II. NUTRAMAX AND ITS AUTHORIZED RESELLERS

25. Nutramax distributes its products through multiple trade channels, including (but not limited to) the veterinary channel, brick-and-mortar retail, hybrid retailers (with a mix of brick-and-mortar and ecommerce outlets) and "pure play ecommerce" (resellers that only have an online sales outlet).

26. Nutramax typically enters into written agreements with each of its authorized resellers and distributors in each trade channel.

27. All, or substantially all, of these agreements, across trade channels, include provisions restricting to whom each authorized party can sell Nutramax products (e.g., only to end users, only to particular resellers, only on particular websites, etc.).

28. In the pure play ecommerce channel, Nutramax's products are distributed through a network of authorized resellers, substantially all of whom enter into agreements with Nutramax governing their sale of Nutramax's products (the "Authorized Reseller Agreements").

29. All, or substantially all, of the Authorized Reseller Agreements include the following requirements to ensure a high level of product quality and customer service:

- The reseller is required to maintain qualified personnel with knowledge of the specifications, features, and uses of Nutramax products and provide quality post-sale support to consumers who purchase Nutramax products. This ensures that consumers receive the level of customer service and support they have come to expect when purchasing genuine Nutramax products.

- The reseller is required to store Nutramax products in a cool, dry area out of direct sunlight in a controlled room with a temperature between 40 and 70 degrees Fahrenheit.

This is because the quality of Nutramax's products can be damaged when stored outside of these conditions.

30. These provisions ensure that the quality of the products and the level of customer service and support remain at the high level consumers have come to expect when purchasing genuine Nutramax products.

31. Nutramax products that are sold by resellers who are not authorized are materially different from the Nutramax products that travel through proper, authorized distribution channels.

32. In particular, because unauthorized resellers are not contractually bound by an Authorized Reseller Agreement with Nutramax, such resellers are not contractually obligated to properly store Nutramax products at conditions that maintain the products' quality.

33. Nutramax therefore cannot know or guarantee the quality of the products sold to end users by such unauthorized sellers; consumers, however, expect that when they purchase "new" Nutramax products online they are purchasing products that have been handled and stored as the manufacturer intended.

34. Unauthorized resellers of Nutramax's products are also not contractually bound to employ someone with knowledge of the specifications, features, and uses of Nutramax's products, as is required under the Authorized Reseller Agreement.

35. Consumers who purchase Nutramax products from such unauthorized resellers are therefore unable to access the pre- and post-sale product support to which consumers who purchase from Nutramax's authorized resellers have access.

**III.  DEFENDANT'S UNLAWFUL CONDUCT**

36. Defendant, who, upon information and belief, is a "pure play" ecommerce seller with no brick-and-mortar retail or other sales outlets, is engaging in the unauthorized sale of

Nutramax's Cosequin® Senior Soft Chews (60 Count), Dasuquin® with MSM for Large Dogs Chewable Tablets (84 Count), and Dasuquin® with MSM for Small/Medium Dogs Chewable Tablets (84 Count) though the Seller Account (the "Nutramax Products"). A true and correct copy of the Defendant's product listing for the Cosequin® product is attached hereto as Exhibit C. True and correct copies of Amazon.com web pages confirming Nutramax's test purchases from Defendant the Dasuquin® products are attached hereto as Exhibit D.

37. Defendant is using the Nutramax Marks in conjunction with this unauthorized sales activity.

38. Consumers, relying on Amazon's reputation – and the reputation of the Nutramax Marks – have no reason to suspect that the Nutramax products purchased from Defendant on Amazon.com are materially different from those purchased directly from Nutramax's authorized resellers.

39. Consumers are therefore being misled to believe that the Nutramax products sold by Defendant are the same as the goods Nutramax sells online through authorized resellers when, in fact, they are materially different.

40. Upon information and belief, the Nutramax products sold by Defendant do not conform to the requirements of the Authorized Reseller Agreements. The Authorized Reseller Agreements are meant to ensure that end users receive the high-quality products and customer service that they have come to expect from Nutramax.

41. In any event, by selling Nutramax products as "new" without being party to an Authorized Reseller Agreement, Defendant is selling to consumers products that are materially different from Nutramax products sold by authorized resellers because, contrary to consumer

expectation, Defendant is not obligated to store Nutramax products at proper temperatures and is not obligated to ensure the quality of pre- and post-sale support provided by authorized resellers.

42. The unauthorized sale, using the Nutramax Marks, of products that are materially different from genuine Nutramax products harms the substantial goodwill that Nutramax has accrued in the Nutramax Marks.

43. Nutramax is the sole distributor of Cosequin® and Dasuquin® supplements and carefully selects its authorized online resellers and distributors.

44. Upon information and belief, Defendant obtained her unauthorized and infringing Nutramax products from one or more of Nutramax's authorized resellers and/or distributors.

45. As noted above, Nutramax's agreements with its resellers and distributors specify to whom those entities can sell Nutramax products. There is no reseller or distributor who Nutramax has explicitly authorized to sell Nutramax products to Defendant.

46. By obtaining the Nutramax products in this manner, Defendant is therefore causing one or more of Nutramax's authorized resellers or distributors to be in violation of their agreements with Nutramax.

47. Nutramax previously notified Defendant that her unauthorized sale of Nutramax products directly interferes with Nutramax's business relationship with one or more of Nutramax's authorized resellers or distributors. Nutramax sent Defendant multiple communications— including on February 5, 2024, February 12, 2024, and May 28, 2024 (all via UPS next day air and the seller messaging platform on Amazon.com), and also on June 5, 2024 (via the seller messaging platform on Amazon.com)—to this effect, with no response from Defendant.

48. Despite this knowledge, Defendant continues to engage in the unauthorized sale of Nutramax products obtained, upon information and belief, from one or more of Nutramax's

authorized resellers or distributors, therefore continuing to intentionally cause those resellers and/or distributors to be in breach of their agreements with Nutramax.

49. Nutramax has no association or affiliation of any kind with Defendant or her online business, and Nutramax has never authorized Defendant to use the Nutramax Marks or sell Nutramax products.

## COUNT I
### Trademark Infringement (15 U.S.C. § 1114)

50. Nutramax incorporates by reference the allegations set forth in paragraphs 1 through 49 of this Complaint as if fully repeated and restated here.

51. The Nutramax Marks identify the goods that are offered and warranted by Nutramax and Nutramax alone. The marks serve as symbols of the substantial goodwill that Nutramax has accrued in its marks.

52. Defendant is using the federally registered Nutramax Marks in interstate commerce without Nutramax's authorization or consent in a manner that is likely to cause confusion, mistake, or deception as to whether the goods originate from Nutramax, whether the goods are sponsored or endorsed by Nutramax, and/or whether the goods are associated or affiliated with Nutramax.

53. Despite Defendant's knowledge of Nutramax's rights in the Nutramax Marks, Defendant continues to use those marks to pass off her unauthorized goods as genuine goods sold by Nutramax or one of its authorized resellers.

54. The goods sold by Defendant are not genuine Nutramax products because they are materially different from Nutramax's genuine products, in that they are not subject to Nutramax's storage condition requirements and are not subject to Nutramax's product support and knowledge requirements that are imposed on Nutramax's authorized "pure play" ecommerce resellers.

55. Defendant's conduct constitutes knowing and willful trademark infringement under Section 32 of the Lanham Act (15 U.S.C. § 1114).

56. Defendant's conduct has enabled her to earn profits to which she is not in law, equity, or good conscience entitled, and has unjustly enriched Defendant, all to Defendant's profit and Nutramax's damage.

57. Nutramax is entitled to injunctive relief under 15 U.S.C. § 1116 because there is no adequate remedy at law to account for Defendant's infringement. Defendant's infringement will continue to cause irreparable harm unless and until it is enjoined by this Court.

58. As a result of the intentional, willful, and wanton actions of Defendant as set forth above, Nutramax is entitled to recover (1) Nutramax's actual damages (which, at the Court's discretion, may be increased to an amount three times the amount proven as actual damages); (2) a disgorgement of Defendant's profits; (3) the costs of the action; and – because this is an exceptional case – (4) reasonable attorneys' fees.

## COUNT II
### False Designations of Origin & False Descriptions (15 U.S.C. § 1125(a))

59. Nutramax incorporates by reference the allegations set forth in paragraphs 1 through 49 of this Complaint as if fully repeated and restated here.

60. Defendant is knowingly selling unauthorized Nutramax products bearing the Nutramax Marks in interstate commerce in a manner that is likely to cause consumer confusion, mistake, or deception as to the true source of the goods and as to whether Defendant is associated with or endorsed by Nutramax.

61. The goods sold by Defendant are not genuine Nutramax products because they are materially different from Nutramax's genuine products, in that they are not subject to Nutramax's

storage condition requirements and are not subject to the product support and knowledge requirements imposed on Nutramax's authorized "pure play" ecommerce resellers.

62. Defendant's conduct constitutes false designations of origin and unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act (15 U.S.C. § 1125(a)(1)(A)).

63. Defendant's conduct has enabled her to earn profits to which she is not in law, equity, or good conscience entitled, and has unjustly enriched Defendant, all to Defendant's profit and Nutramax's damage.

64. Nutramax is entitled to injunctive relief under 15 U.S.C. § 1116 because there is no adequate remedy at law to account for Defendant's infringement. Defendant's infringement will continue to cause irreparable harm unless and until it is enjoined by this Court.

65. As a result of the intentional, willful, and wanton actions of Defendant as set forth above, Nutramax is entitled to recover (1) Nutramax's actual damages (which, at the Court's discretion, may be increased to an amount three times the amount proven as actual damages); (2) Defendant's profits; (3) the costs of the action; and – because this is an exceptional case – (4) reasonable attorneys' fees.

## COUNT III
### Illinois Common Law Tortious Interference with a Contract

66. Nutramax incorporates by reference the allegations set forth in paragraphs 1 through 49 of this Complaint as if fully repeated and restated here.

67. Nutramax maintains close business relationships with its authorized resellers and distributors. These relationships are formalized in written agreements.

68. Defendant was given notice of Nutramax's contractual relationships with its authorized resellers and distributors. Additionally, Defendant was given notice of the fact that her unauthorized sale of Nutramax goods interfered with Nutramax's contractual relationships with its

authorized resellers and distributors. Yet Defendant has continued to source and sell her unauthorized products.

69. Upon information and belief, Defendant is intentionally inducing one or more of Nutramax's authorized resellers and/or distributors to breach their agreements with Nutramax by offering to buy and/or buying Nutramax products from one or more of them—none of whom are authorized to sell Nutramax products to Defendant for resale.

70. Upon information and belief, Defendant's interference with Nutramax's agreements with its authorized resellers and/or distributors has caused those parties to divert their authorized Nutramax products to unauthorized purchasers in breach of their agreements with Nutramax.

71. Defendant's unjustified and continued sale of unauthorized Nutramax products has harmed and will continue to harm Nutramax by causing Nutramax's authorized sellers to breach their agreements with Nutramax. Nutramax notified Defendant of the tortious nature of her actions on multiple occasions. Upon information and belief, Defendant intentionally, and with malice, directed her tortious actions at Nutramax to cause it harm, which harm will continue unless and until this Court enjoins Defendant's unauthorized sales.

72. Upon information and belief, Defendant's sale of unauthorized Nutramax products has led to consumer dissatisfaction that was wrongly attributed to Nutramax, harming Nutramax's reputation and the goodwill that it has built up in the Nutramax Marks and, upon information and belief, leading to lost sales.

73. Defendant's failure to be bound by Nutramax's authorized reseller requirements, including requirements regarding storage conditions and product knowledge and support, render the Defendant's products materially different from authorized Nutramax products that travel in the

appropriate distribution chain that flows from Nutramax to authorized resellers and distributors to end users.

74. Defendant's conduct constitutes intentional tortious interference with a contract for which Defendant is liable to Nutramax.

75. Nutramax is entitled to injunctive relief because there is no adequate remedy at law to address Defendant's tortious conduct. Defendant's tortious activity will continue to cause irreparable harm unless and until it is enjoined by this Court.

76. As a result of the intentional, willful, and wanton actions of Defendant as set forth above, Nutramax is entitled to recover (1) Nutramax's actual damages; and (2) punitive damages.

## JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Nutramax demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Nutramax prays for relief and judgment as follows:

1. The Court enter judgment that the Nutramax Marks are valid and enforceable; that Nutramax owns those marks; that Defendant is infringing those marks; that Defendant is using false designations of origin and engaging in unfair competition in violation of 15 U.S.C. § 1125(a); and that Defendant is tortiously interfering with Nutramax's contracts with its authorized resellers and distributors in violation of Illinois common law.

2. Defendant, her affiliates, officers, agents, servants, employees, attorneys, and representatives, as applicable, and all persons acting for, with, by, through, under, or in active concert with them, be permanently enjoined and restrained from:

        (a)     using the Nutramax Marks or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, or sale of any product that Nutramax has not authorized to be sold by Defendant in connection with the Nutramax Marks;

        (b)     passing off, inducing, or enabling others to sell or pass off any product as a genuine COSEQUIN, DASUQUIN, or NUTRAMAX LABORATORIES product or any other product produced by Nutramax that is not Nutramax's product or not produced under the authorization, control, or supervision of Nutramax and approved by Nutramax for sale by Defendant;

        (c)     shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not authorized by Nutramax to be sold or offered for sale by Defendant; and

        (d)     otherwise competing unfairly with Nutramax in any manner.

3.     The Court enter an Order that, upon Nutramax's request, Defendant, those in privity with Defendant, and those with notice of the injunction – including any online retailers, social media platforms, internet search engines, and email service providers for Defendant – shall:

        (a)     disable and cease providing services for any accounts through which Defendant engages in the unauthorized advertising, promotion, or sale of COSEQUIN, DASUQUIN, or NUTRAMAX LABORATORIES products or any other product produced by or for Nutramax;

        (b)     disable and cease displaying any advertisements used by or associated with Defendant in connection with the unauthorized advertising, promotion, or sale of COSEQUIN, DASUQIN, or NUTRAMAX LABORATORIES products or any other product produced by or for Nutramax; and

(c) Deliver to Nutramax or destroy, at Nutramax's discretion, all Nutramax products or other products bearing the Nutramax Marks in Defendant's possession or held on behalf of Defendant.

4. The Court enter an Order awarding Nutramax, on Counts I & II: (1) Nutramax's actual damages (which, at the Court's discretion, may be increased to an amount three times the amount proven as actual damages); (2) Defendant's profits; and (3) the costs of the action.

5. The Count enter an Order awarding Nutramax, on Count III, its actual damages and punitive damages.

6. This case be deemed an exceptional case and Nutramax be awarded its reasonable attorneys' fees incurred in connection with its Lanham Act claims pursuant to 15 U.S.C. § 1117.

7. Nutramax be granted such other, different, and additional relief as the Court deems just and proper.

8. Defendant, within fourteen (14) days after service of judgment upon them, be ordered to file with the Court and serve upon Nutramax a written report under oath setting forth in detail the manner and form in which Defendant has complied with the requirements of the judgment.

- 17 -

Respectfully submitted, this 27 day of June, 2024.

By: */s/ Robert D. Leighton*
A. Colin Wexler
Robert D. Leighton
GOLDBERG KOHN LTD.
55 East Monroe Street
Chicago, IL 60603
Telephone: 312-313-0142
*colin.wexler@goldbergkohn.com*
*robert.leighton@goldbergkohn.com*

Jason D. Rosenberg
*jason.rosenberg@alston.com*
Illinois Bar No. 6275801
Uly S. Gunn (*pro hac vice forthcoming*)
*sam.gunn@alston.com*
Georgia Bar No. 261871
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone: 404-881-7000

*Attorneys for Plaintiffs Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc.*